O'BRIEN v. RAMON DE LARRINAGA.

PILOTS—PILOTAGE FEES—VESSELS.—The properly licensed pilot who first offers, from a regularly numbered pilot boat, within the prescribed cruising ground, to board a vessel seeking to enter his port, is entitled to demand and receive from the master the pilotage fees prescribed by law, whether he is permitted to bring the vessel in or not.

Before EARLE, J., Beaufort, October, 1896. Reversed.

Action by John O'Brien against Felix Ramon de Larrinaga and M. A. Echevarria. From an order dissolving an attachment levied on the ship, Ramon de Larrinaga, the plaintiff, appeals on the following exceptions:

1. Because his Honor erred in holding that appellant had

no cause of action. 2. Because his Honor erred in holding that the master of the steamship Ramon de Larrinaga was not bound to receive the appellant on board as a pilot, for the reason that there was already on board a duly licensed pilot; whereas he should have held that the pilot on board, having sailed with the steamship from Philadelphia, Penn., was not lawfully on board, and that the master should have received on board appellant, who was the first pilot to offer to board said ship from a regularly numbered pilot boat, and within the cruising ground of St. Helena bar. 3. Because his Honor erred in holding that appellant had no cause of action; whereas he should have held that appellant was entitled to receive the pilotage fees prescribed by law, he being a duly licensed full branch pilot of St. Helena bar, and having been the first pilot who offered to board said ship from a regularly numbered pilot boat, within the cruising ground of St. Helena bar, notwithstanding the fact that there was already on said ship a full branch pilot, who had neither offered to board nor had boarded the ship from a regularly numbered pilot boat within said cruising ground. 4. Because his Honor erred in holding that appellant based his cause of action on the allegation that he offered to board the ship and was refused; whereas his Honor should have held that appellant based his cause of action both on the said offer and refusal, and also upon the services subsequently actually rendered said master with the consent and by the employment of said master. 5. Because his Honor erred in not holding that appellant had, and alleged, a cause of action in each of the following particulars: a. In piloting said ship out of St. Helena harbor on July 31st, 1896. b. In piloting said ship over Port Royal bar and into Port Royal harbor on said July 31st. c. In piloting said ship from the Port Royal quarantine station to the town of Port Royal on August 1st, 1896. d. In piloting said ship from the town of Port Royal to her anchorage in the stream on August 2d, 1896. e. In that, having the right to pilot the vessel out of Port Royal harbor and over the bar, and hav-

ing been ready and willing to so pilot said ship, and having been notified by the master to be on board for that purpose, he was entitled by law to be paid his fees therefor in advance. 6. Because if Pilot De Zabaljauregui or Antonio Santos lawfully piloted said ship into St. Helena harbor, he substituted appellant in his place to pilot the ship out of St. Helena, as he had a right by law to do, and appellant thereupon became entitled to the fees therefor, and his Honor erred in not so holding. 7. Because his Honor erred in holding that the fact of Antonio Santos being on board said ship defeated appellant's cause of action, while it also appears that the master has neither paid the pilotage fees to said Santos nor to any other pilot. 8. Because by the rules and by-laws of the commissioners of pilotage for the bars of St. Helena and Port Royal, as well as by geneal law, a pilot cannot lawfully board a ship bound for the port of St. Helena in any other port, nor board such ship except from a regularly numbered pilot boat and within the prescribed cruising ground, and his Honor erred in not so holding.

*Messrs. Elliott & Elliott,* for appellants, cite: Rev. Stat., 1383, 1373, 1375, 1367, 1371; 19 S. C., 221; 23 S. C., 178; 2 Paine, 472; 2 Rich., 213; 12 How., 312; 2 Wal., 456; 13 Wal., 238; 102 U. S., 574; 5 Met., 416; 2 Paine, 243; 8 Sawyer, 237; 2 Paine, 468; 12 Pick., 312; 32 S. C., 347.

*Mr. W. J. Verdier,* contra, cites: 47 S. C., 14; Rev. Stat., 1375; Rev. Stat., vol. 2, sec. 255.

July 1, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff, alleging that he was and still is a duly licensed and qualified full branch pilot for the bars and harbors of St. Helena and Port Royal, in this State, brought this action against the defendants, the former as owner and the latter as master of the steamship "Ramon de Larrinaga," of Balboa, Spain, to recover certain pilotage fees to which he claimed to be

entitled, by reason of the fact that he was the first pilot who offered to board said ship from a regularly numbered pilot boat, the "Sprite," No. 6, of said bars, then being within the cruising grounds of St. Helena bar, for the purpose of piloting said ship over said bar. A warrant of attachment was duly obtained from the clerk of the Court of Common Pleas for Beaufort County, under which the ship was seized by the sheriff, but was afterwards released, the defendant having appeared and given the usual undertaking, with sufficient sureties. Thereupon the defendant gave notice of a motion to discharge and set aside the attachment. This motion was heard by his Honor, the late Judge Earle, who, with the consent of counsel, directed that the rules and by-laws established by the board of pilot commissioners for Port Royal and St. Helena bars (a copy of which are incorporated in the "Case"), should be received in evidence. Upon the hearing, the following order was granted: "This was a motion based on affidavits to set aside the attachment issued herein by the clerk of the court; it was opposed also upon affidavits, and the original affidavits upon which the attachment was issued. The plaintiff's cause of action was based upon the allegation that as pilot he offered to board the Spanish steamship 'Ramon de Larrinaga' off St. Helena bar, she being bound over said bar and to St. Helena harbor, on the 20th day of July, 1896, and that the master of said ship refused to take him as such pilot. The affidavits submitted in support of the motion show that on the occasion stated by the plaintiff, the said ship was already supplied with a pilot, and had on board at the time plaintiff alleges he offered to board her, a duly licensed full branch pilot, who piloted her over St. Helena bar and into harbor, and continued on board of her when she recrossed St. Helena bar and crossed Port Royal bar into Port Royal harbor. These facts were not denied or contradicted. The fact, then, is undisputed, that there was a licensed pilot on board the ship when the plaintiff made his alleged offer to board her. Such being the fact, the master of said ship was not bound

to receive the plaintiff on board, and the plaintiff, therefore, has no cause of action on account of said master's refusal. It appearing, then, from the evidence submitted, that the plaintiff had no cause of action, it is manifest that the attachment must be set aside.  After hearing Mr. Verdier for the motion, and Mr. Elliot in opposition, it is ordered and adjudged, that the attachment issued herein be, and the same is hereby, discharged and set aside, as having been improvidently issued, and that the defendant have $10 costs of this motion."

From this order plaintiff appeals upon the several grounds set out in the record, which should be incorporated in the report of the case.

It seems to us that there was error of law in granting this order.  The Circuit Judge, ignoring the fact that a part of the plaintiff's claim was for services rendered in taking out the ship, at the request of the master of the ship, and with the acquiescence and consent of the person who piloted the ship in, which were certainly sufficient to constitute a cause of action for a part, at least, of plaintiff's claim, held that the plaintiff's claim was based alone upon the fact that he was the first pilot who spoke the ship from a regularly numbered pilot boat within the cruising grounds of St. Helena bar, and offered to pilot her across the bar, and that such claim could not be sustained, solely because there was a licensed pilot on board the ship when the plaintiff offered to board her.  This, we think, in view of the statute and the rules and regulations established by the board of pilot commissioners, was also error of law.  The system of pilotage for the State is regulated by the provisions found in chap. 39 of the Rev. Stat. of 1893.  Sec. 1358 provides for the appointment of a board of commissioners of pilotage of Beaufort, which shall have jurisdiction over St. Helena, Port Royal and all entrances to the southward, and sec. 1383 provides that such board "shall have power and authority to prescribe to the licensed pilots such orders and regulations, not inconsistent with this chapter, as to them,

or a majority of them, may appear suitable and proper." In accordance with the power thus vested in them, the said board of commissioners have prescribed the rules and regulations set out in the "Case." By the first section of these rules the limits of the pilot ground for St. Helena and Port Royal bars are prescribed, and each licensed pilot is furnished with a copy of said rules and regulations, which he is required to produce when required by any one employing him. The third section provides as follows: "All vessels in the above named waters will be held for full amount of pilotage to the pilot entitled to the same, whether his services are accepted or not." Sec. 9 provides that "No pilot shall be allowed to take charge of any vessel on either of the bars or in the adjacent waters, unless attached to a duly numbered pilot boat belonging to the bar, as prescribed by law." Sec. 21 provides "That no pilot shall be allowed to board any vessel except from a regularly numbered pilot boat, unless he get permission to do so from the commissioners." Sec. 25 provides as follows: "Pilots are strictly prohibited from boarding vessels bound to this district in Charleston, Savannah or any other port, and are hereby warned that they must confine themselves to the cruising ground as prescribed by law. No pilot shall be entitled to collect pilotage fees of any vessel so boarded, and must deliver such vessel into charge of the first pilot who speaks her or offers his services to her, either on the cruising ground or after he has entered port." Besides these rules and regulations, section 1373 of the Revised Statutes of 1893 expressly provides, as in section 3 of the rules, that any master of a vessel bearing towards any harbor or bar (all coasters and other vessels trading between any ports within this State excepted), who shall refuse to receive on board a licensed pilot for the said bar and harbor offering to board, shall be liable on his arrival at the said port to pay such pilot who first offered to go on board and take charge of such vessel, the rates and fees established by law, as if such pilot had actually brought

in such vessel to said port, with certain exceptions not applying to this case.

From this brief view of the statutory provisions in reference to pilotage, and the rules and regulations prescribed in conformity therewith, it is manifest that the scheme of the law is, that, with a view to the protection of both life and property on board of vessels proposing to enter the ports and harbors of this State, and in view of the arduous and hazardous nature of the duties required of pilots, there shall always be a sufficient number of competent and experienced pilots in the prescribed crusing grounds of the several bars and harbors, ready to offer their services to all incoming vessels, and that the pilot who first offers to board such vessel from a regularly numbered pilot boat, then being within the prescribed cruising grounds, shall be entitled to demand and receive from the master of such vessel the pilotage fees prescribed by law; and that all pilots are strictly prohibited from boarding any vessel in any other port; and if he does so, he is not only deprived of the right to charge any pilotage fees, but is also required to deliver such vessel into charge of the first pilot who speaks her or offers his services to her on the cruising ground prescribed for the port into which such vessel is seeking to enter.   It also appears that every pilot is required to produce the copy of the rules, with which he is furnished, when required to do so by any one employing him; and hence the master of any vessel seeking to enter any of the ports of the State knows, or, at least, has the means of knowing, what are the rules prescribed for the government of pilots in such ports.

Now, in this case, the undisputed evidence is that the plaintiff was a duly licensed full branch pilot for the bars and harbors of St. Helena and Port Royal, and that he was the first pilot who spoke the defendants' ship from a regularly numbered pilot boat, within the cruising grounds prescribed for said bars and harbors, and, therefore, he was clearly entitled to collect the pilotage fees, whether his services were accepted or not.   The fact relied upon by the

Circuit Judge—that the ship already had on board, when the plaintiff offered his services, a duly licensed full branch pilot, one Agapito de Zabaljauregui, otherwise called Antonio Santos, who piloted her over St. Helena bar—is not sufficient to defeat the plaintiff's claim, for the reason that it is stated distinctly in the affidavit of the master of the ship that the said Antonio Santos had boarded the ship while lying at a wharf in Philadelphia. This, as we have seen, was in direct violation of law, and not only deprived said Antonio Santos of the right to charge any pilotage fees, but also required him to surrender the vessel to the first pilot who offered to board the ship from a duly numbered pilot boat, within the proper cruising ground; and this person the undisputed evidence shows was the plaintiff. . It also appears from the affidavit of the master that the conduct of said Antonio Santos was such as to excite his suspicions; and if he had taken the most ordinary precautions, by requiring said Santos to produce his copy of the rules, he would have found that Santos had no right to pilot the ship over the bars of St. Helena and Port Royal, and that he was bound to accept the services of the plaintiff, and whether accepted or not, he was bound to pay him the pilotage fees. It seems to us that the Circuit Judge erred, as a matter of law, in holding that the mere fact that Santos was on board of the ship when plaintiff offered his services, in view of the further undisputed fact, known to the master, that Santos had boarded the ship in Philadelphia, where he had no right to do so, authorized the master to decline the services of the plaintiff, and relieved the ship from liability to the plaintiff for the pilotage fees. In the eyes of the law, there was no pilot on board the ship authorized to pilot the ship across the bars of St. Helena and Port Royal at the time plaintiff offered his services, and, therefore, the master was bound to accept the services of plaintiff, and if he declined to do so, the ship was liable to plaintiff for the prescribed pilotage fees.

It is obvious that if a master of a foreign vessel can take

on board a pilot whenever he chooses to do so, and upon that ground refuse to accept the services of a duly licensed pilot for the port which the vessel is seeking to enter, when duly tendered according to the rules prescribed for such port, it would tend very much to destroy the system of pilotage prescribed for the ports and harbors of this State.

The judgment of this Court is, that the order appealed from be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary.